THE NEW YORK BREWERIES CORPORATION, LIMITED, *vs.* ISABEL D. BAKER, INDIVIDUALLY AND AS EXECUTRIX.

First Judicial District, Hartford, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, JS.

Section 3078 of the General Statutes provides that no person shall sell liquor by sample, by procuring orders, or otherwise, within this State, without taking out a license therefor. *Held* that this statute did not prohibit a foreign brewer, who had not taken out a license in this State, from selling his ales in New York to a licensed Connecticut dealer, pursuant to a special or exclusive business arrangement with the latter. Nor is it necessary to the validity of such sales that the brewer should inquire whether the license for which the Connecticut dealer paid and under the protection of which he carried on his business, was issued in the proper form.

The incorrect use of the form of complaint known as " the common counts " commented upon, and its legitimate use stated.

[Argued October 7th—decided December 1st, 1896.]

ACTION to recover the amount of two promissory notes, brought to the Superior Court in Hartford County and tried to the court, *Robinson, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The plaintiff is a foreign corporation engaged in the business of brewing and selling ales in the city of New York; the defendant is executrix on the estate of William Baker, who at the time of his death was a licensed liquor dealer in Hartford, and a wholesale customer of the plaintiff in the purchase of the plaintiff's ales for Hartford and vicinity. Since William Baker's death in 1887, the defendant has continued her business in Hartford under the name of " Estate of William Baker," and has purchased of the plaintiff, and sold in Hartford and vicinity, the plaintiff's ales, as they were formerly purchased and sold by William Baker, in pursuance of an understanding to that effect, reached in an interview at Hartford shortly after William Baker's death. The orders for goods purchased of the plaintiff were usually made by

filling out blank orders on postal cards with the plaintiff's address in New York printed on the address side. The plaintiff sent such blank orders to the defendant by mail once or twice a year, or oftener as needed. The orders were filled out by the defendant or her business manager, and were mailed at Hartford. The goods ordered were directed to be sent to defendant at her place of business in Hartford, and sometimes to her customers. The plaintiff's collecting agent called at the defendant's place of business in Hartford, monthly, to present a statement of account with the "Estate of William Baker," adjust the same with the defendant's manager, and receive payment for the amounts due. The payments were made by the defendant. The goods sold to the defendant were ordered of the plaintiff by mail as aforesaid, were shipped at New York by cars or boat to consignees, or " Estate of William Baker," and the freight paid by the latter. The shipments and sales thus made amounted to about $1,500 per month during the seven years, 1887 to 1894. The sums due from her customers to the defendant for ales sold them by her, were collected by her business manager monthly, or oftener, and turned over to her. Until 1889 the license to sell liquor at defendant's place of business was in her name, and subsequently in the name of her business manager, and the license fee was paid by her. The plaintiff had no license to sell liquor in this State. The notes in suit were given in payment of the balance due on account of purchases made as aforesaid, and were signed by defendant "Individually and as Executrix of the last Will and Testament of William Baker, deceased." The note described in the first count was executed by the defendant in New York, upon a settlement of account then and there had between plaintiff and defendant. The note described in the second count was executed in Hartford, in payment of purchases made subsequent to the settlement.

The defendant relied upon special defenses, alleging: 1. At the time of the sales of ale made by the plaintiff to the defendant, the plaintiff had no license to sell liquors in the city or county of Hartford. 2. At the time of said sales the

plaintiff knew the defendant was engaged in selling liquors in Hartford as executrix, without a license, and that the liquors sold were bought by the defendant as executrix for the purpose of selling the same without a license. 3. That since 1889, while the plaintiff was making said sales to the defendant as executrix, the plaintiff had no license to sell in Hartford, and knew that the defendant intended to sell and did sell without a license, as executrix, the ales bought of the plaintiff, and knew that the defendant had no license as an individual to sell liquors, and that the plaintiff sold said liquors to the defendant as executrix with intent to enable the defendant to violate the law of this State regarding the sale of liquors. 4. That the plaintiff induced the defendant to sign the notes in suit individually by means of false representations.

The court found, in addition to the facts above recited, that the plaintiff had no knowledge as to the name of the licensee in the license under which the business of the defendant was conducted, took no pains to ascertain this, and presumed that the defendant was complying with the Connecticut law; that the plaintiff had no intention in making the sales to the defendant of enabling the defendant or any person to violate the law of Connecticut; that the plaintiff sold no liquors to the defendant in the State of Connecticut, but that the sales were made within the city of New York; that no person in plaintiff's behalf sold any liquors to the defendant by sample or procuring orders, or otherwise, within the State of Connecticut; that no fraud or false representations were practised upon the defendant by the plaintiff to induce the defendant to execute said notes individually, but that the same were executed and delivered by defendant and accepted by plaintiff as properly expressing the mutual rights and obligations at the time of the dates of said notes; and rendered judgment for the plaintiff against the defendant individually.

' From this judgment the defendant appeals, and the errors assigned in the reasons of appeal are, that the court erred in overruling the claims of law made by the defendant, i. e.,

that no recovery could be had upon the notes, because the sales were made in violation of the laws of Connecticut, in that the plaintiff had no license to do the business in question in this State; and because defendant had no license to sell intoxicating liquors in this State.

*Lewis E. Stanton* and *William F. Henney*, for the appellant (defendant).

The facts found show a carefully arranged and preconcerted scheme to sell liquor in Connecticut, and to take certain territory in the State and supply liquors to all customers within that territory, who could be induced to purchase. It was a plan to make a market for the plaintiff's liquors in Connecticut, and to have the benefit of such a market. Such acts require a license to be taken out by one party or the other, either purchaser or seller, in fact by both. Gen. Stats. §§ 3078, 3114; *Fishel* v. *Bennett*, 56 Conn. 40; *Reynolds* v. *Geary*, 26 id. 179; *State* v. *Basserman*, 54 id. 93. Intoxicating liquors, kept or sold contrary to law, constitute a nuisance. No action can be maintained for them or for the price of them. *Schlesinger* v. *Chapman*, 52 Conn. 272. This doctrine applies to all liquors intended to be sold contrary to law, and to all suits for the possession of such liquors. *Donahue* v. *Maloney*, 49 Conn. 164. A liquor license is a personal privilege. There is no provision under which one man may take out a license and another man sell liquors under it, without some legal transfer. Gen. Stats. §§ 3053, 3063–3080. The plaintiff was under the same obligation to know whether it was shipping liquors to an unlicensed person, as to know whether it was shipping liquors into a no-license town. A leading case upon this subject holds that a sale by a traveling agent in this State, of liquors to be delivered in another State, is a violation of our law. *State* v. *Ascher*, 54 Conn. 299.

*William Waldo Hyde* and *Arthur L. Shipman*, for the appellee (plaintiff).

The sales of liquors by the plaintiff to the defendant were

made in the State of New York and not within this State, and consequently § 3078 of the General Statutes does not apply. 2 Pars. on Cont. (7th Ed.) 712, 717; 1 Benj. on Sales (6th Amer. Ed.), § 517; *Garland* v. *Lane*, 46 N. H. 245; *Pilgrim* v. *State*, 71 Ala. 368; *Tuttle* v. *Holland*, 3 Vt. 542; *State* v. *Carl*, 43 Ark. 353, 51 Amer. Rep. 565. The cases of *State* v. *Ascher*, 54 Conn. 299, and *Fishel* v. *Bennett*, 56 id. 40, as bearing upon the question of the validity of the notes in suit, are clearly distinguishable. The sale was not made with the intent to enable the defendant to violate any law of this State relating to the sale of spirituous and intoxicating liquors. The court has so found as a matter of fact. This finding is conclusive as to the question of intent. *State* v. *Cunningham*, 25 Conn. 195, 202; *Quinnebaug Bank* v. *Brewster*, 30 id. 559, 560; *Ward* v. *Ward*, 59 id. 188, 197. There was never a moment during all the time covered by the transaction in question, when the sale of liquor at 130 Front Street was not authorized by a license duly obtained.

HAMERSLEY, J. The sales in question being made in New York, it was not necessary for the plaintiff to take out a license to sell liquors in this State; nor to inquire whether the license for which the defendant paid and under the protection of which she carried on her business, should have been issued to her as executrix rather than to her individually, or to her business manager.

In *State* v. *Ascher*, 54 Conn. 299, it was held that § 3078 of the General Statutes prohibits any person acting as agent of a merchant doing business in another State, from procuring in this State orders for liquors, although such orders are to be filled by a delivery of the property out of the State, unless such person shall be duly licensed, and that for police purposes the statute calls such acts of an agent a sale by him, and therefore an offense; but it was not held that the statute prohibits a foreign brewer from making a special or exclusive business arrangement with a Connecticut firm for the purchase and sale of his ales, unless the foreign brewer becomes a licensed dealer in this State. Such a con-

struction of the statute is plainly untenable, and should not be adopted, even if some language of the opinion in *State* v. *Ascher* could, as claimed by the defendant, be treated as favoring the construction.

Section 3114 of the General Statutes provides that no action of any kind shall be maintained for the price of intoxicating liquors sold in any other State with intent to enable any person to violate any law of this State relating to the sale of such liquors; and if the plaintiff had sold the ales in question with such intent, it could not recover in this suit. Counsel for the defendant seem to claim that the real gist of the transactions between the plaintiff and defendant was a scheme for enabling the plaintiff to sell its ales in this State without paying the license fee required by law of all persons selling in this State; and that the defendant was a mere go-between or agent of the plaintiff, through whom the plaintiff, without a license therefor, sold, in form in New York, to the defendant, but in reality in this State to the nominal customers of the defendant. Whether this claim is regarded as based on inferences of fact or law, it is in direct conflict with the facts found by the trial court, and there is nothing in the record to give it any substantial support.

We notice that the plaintiff, after properly stating its cause of action, has used the form of complaint called " the common counts," as a separate count in its complaint. The common count, as used in common law pleading, is forbidden by the Practice Act. It was a form of action founded on a promise that might never have been made. The real cause of action, *viz*, a legal duty unperformed (as the duty to repay money loaned, or to pay the price of goods bought, etc.), was stated in the most general way as an inducement to the nominal foundation of the action, which was the fictitious promise, so that if the false statement—" in consideration thereof (*i. e.* of the duty to pay the plaintiff the amount due), the defendant undertook and faithfully promised the plaintiff to pay," etc. were omitted, notwithstanding the actual cause of action might be stated, a judgment by de-

fault would have been reversible on writ of error. *Lee* v. *Welch*, 2 Str. 793.

This count was used at common law in four forms, but the *indebitatus* count, under our practice, was ordinarily used for all; and as the various grounds of indebtedness were alleged as inducement to the fictitious promise, several such grounds might be stated in one count; the promise they are supposed to have induced constituting only one cause of action. Such pleading is impossible under the Practice Act, and the common counts, either singly or grouped in one count in *indebitatus assumpsit*, can never be used. The form of complaint called "The Common Counts" (Form 85), states separately nine causes of action, but does not contain a single common count at common law; the real cause of action in each count is directly stated, and the fictitious promise, without which the common law count is fatally defective, cannot be stated. Form 85 however, except for the rule of court (Rules under Practice Act, II., § 1), would be demurrable; it does not state "the facts constituting the cause of action," with the completeness nor with the particularity required by the Practice Act. This sufficiently appears, by comparing the several counts contained in the form, with the forms given elsewhere in illustration of the proper manner of stating these causes of action. (As for instance, compare count 1 with form 1; count 2 with forms 200, 201, etc.) This incomplete form of complaint was allowed, as stated in the prefatory note to the Practice Act, "as a mode of instituting an action," and, as stated in the rules of court, "for the commencement of an action, when any of these counts is an appropriate general statement of the cause of action." It was in fact allowed as a convenient mode of bringing a limited class of actions, deemed necessary under our practice, where the declaration or complaint must accompany the writ instead of being filed on its return, as is the practice in other jurisdictions where the new mode of pleading prevails. But the rule, while allowing this mode of instituting an action, does not contemplate permitting such incomplete form to call for any answer from the defendant, or even to support a judgment

by default.   On the other hand it treats the form as rather in the nature of a summons, requiring a full complaint to be filed on return of the writ.   This may be done, either by filing a bill of particulars and striking out all counts not applicable thereto, or by amending the complaint by filing a substituted complaint, or such other amendment as may be necessary to show the cause of action as fully as is required in other cases; and such amendment (being analogous to a complaint filed upon return of a summons, when actions are commenced by summons only) must be made after return of the writ and before the defendant is called upon to plead, or a default can be taken.   When parties fail to observe the rule, it should be enforced by trial courts.

Since Form 85 contains nine counts, each stating a separate cause of action, and is allowed only as a "form of complaint" in the manner "provided," it is apparent that such form can be used only as "the complaint" for the "commencement of an action"; and can never be used as a single count for the separate statement of a cause of action.   This mode of instituting an action covered in substance the same rights of action for which the common law remedy was *indebitatus assumpsit* or the common counts, and so the rule of court, in providing the "form of complaint" for the commencement of such action, denominated it "the common counts."   Its use has led to violations of the Practice Act and of the rule; and such violations, in their indirect consequences certainly, are serious evils.   They are not likely to come before us as errors assigned on appeal; but as one or two of the references we have heretofore made to the matter may be liable to be misunderstood, and as the vicious practice incumbers our records and induces errors that do come before us, we deem it proper to call the attention of counsel and of trial courts to the necessity of following and enforcing the rule of court which allows and regulates the use of this "form of complaint."

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.