ALEXANDER DUNNETT *vs.* EDWARD R. THORNTON.

First Judicial District, Hartford, March Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Rule II, § 1, under the Practice Act, provided that a complaint in a form called the "common counts" (*Form 85*) might be used for the commencement of an action, when any of those counts was "an appropriate general statement of the cause of action;" but that the defendant should not be required to plead, nor should any default be taken, until the plaintiff had filed a proper bill of particulars, or such further statement by way either of a substituted complaint or amendment, as might be necessary to show his cause of action as fully as required in other cases. In the present action the real object of the plaintiff was to recover the price of certain hotel supplies which *A* had turned over to the defendant upon the latter's agreement to take them at cost and to pay the sum found to be due therefor to the plaintiff. The cost or invoice prices were subsequently fixed by *A* and the defendant, in co-operation with the plaintiff, and the defendant thereupon promised to pay the plaintiff the amount thus ascertained. The plaintiff's complaint followed *Form 85*, and the amendment thereto alleged the foregoing facts. *Held* that paragraph 9, or the "count" in the complaint which alleged that on a date named a sum certain "was found to be due to the plaintiff from the defendant on an account then and there stated between them," was an appropriate, although a general and defective, statement of the cause of action set forth in detail in the amendment, and that the trial court erred in ruling otherwise and in holding that it had no power, under the circumstances, to allow the plaintiff to file the amendment.

Dunnett *v.* Thornton.

The purpose and legal effect of the Practice Act stated and applied.

The essential and controlling fact upon which the obligation alleged in paragraph 9 of *Form 85* arises, is an agreement between the parties that items of indebtedness, theretofore in dispute, are true and amount to a particular sum agreed upon as due from the defendant to the plaintiff.

The refusal to allow a proper amendment, upon the ground that the court had no power to do so, is not an exercise of discretion, but an error of law reviewable upon appeal.

After the trial court had refused to allow the proposed substituted or amended complaint, it ordered the plaintiff to file a proper bill of particulars or further statement pursuant to the foregoing rule. *Held* that a judgment of nonsuit for neglect to comply with this order did not preclude the plaintiff from challenging the correctness of the ruling that preceded and induced such judgment.

Argued March 7th—decided May 2d, 1900.

ACTION upon the so-called common counts, brought to the Court of Common Pleas of Litchfield County, where the plaintiff was nonsuited because of his failure to file a proper bill of particulars within the time ordered by the court ( *Welch, J.*), from which judgment he appealed.　Prior to this order the plaintiff attempted to file a substitute complaint, which the court declined to receive, and this refusal was also assigned as error.　*Error, judgment reversed and cause remanded.*

The original rules under the Practice Act provided as follows : " The form of complaint hereinafter provided, and denominated ' the common counts,' may be used for the commencement of an action, when any of these counts is an appropriate general statement of the cause of action ; but the defendant shall not be required to plead, nor shall any default be taken, until the plaintiff has filed a proper bill of particulars, or such further statement by way either of a substituted complaint, or of amendment, as may be necessary to show his cause of action as fully as is required in other cases ; and such statement, where the demand is founded on an express contract, whether executory or executed, shall set forth the terms of the contract.　Where a bill of particulars only is filed, all the counts not applicable thereto shall be struck out by amendment. . . .

" The bill of particulars, substituted complaint, or amend-

ment, provided for by Rule II, § 1 (the above rule), must be filed . . . within ten days after the return day of the writ, unless otherwise agreed by both parties, or ordered by the court." Practice Book, pp. 12, 15. These rules were slightly changed in 1899. Rules of Court, §§ 129, 155.

The form of complaint referred to in the rule as provided for the commencement of an action, is *Form 85* of the Practice Book, p. 60, and is as follows:

"1. On and before January 1st, 1879, the plaintiff lent $1,000 to the defendant;

" 2. And paid, laid out, and expended said sum for the defendant;

" 3. And sold and delivered goods, wares, and merchandise, of the price and value of said sum, to the defendant;

" 4. And bargained and sold goods, wares, and merchandise, of the price and value of said sum, to the defendant;

" 5. And performed work, of the price and value of said sum, for the defendant;

" 6. And furnished materials, of the price and value of said sum, to the defendant;

" 7. And, on said day, the defendant had and received said sum, to and for the use of the plaintiff;

" 8. And used and occupied certain lands of the plaintiff, by his permission, which use and occupation were reasonably worth said sum;

" 9. And said sum was found to be due to the plaintiff from the defendant, on an account then and there stated between them;

"10. Yet though said sums are justly due to the plaintiff from the defendant, the defendant has never paid the same.

" The plaintiff claims $1,200 damages."

The plaintiff's complaint contains nine causes of action, stated as in *Form 85*, and also two additional paragraphs: one stating a cause of action arising from furnishing board and lodging, washing and fuel, and the other a cause of action arising from furnishing horses, harness, carriages and vehicles.

After the ten days, as well as the time limited for amend-

ment without payment of costs, had expired, the plaintiff filed with the clerk of the court a substituted complaint as an amendment, which in substance alleges that one Chase agreed with the defendant to sell to him certain supplies then in the Hotel Winchester, to be invoiced at cost, and the defendant agreed to pay for the same so far as they were in good condition; that afterwards the said Chase did sell and deliver said supplies to the defendant, and the defendant thereupon agreed to pay to the plaintiff the sum which should be found to be due to said Chase under said invoice (the supplies not having been invoiced at the time of the sale and delivery); that in pursuance of said sale the defendant entered into possession of said supplies and accepted and used the same; that subsequently, in pursuance of the terms of said sale, said Chase and the defendant, in co-operation with the plaintiff, made an invoice of said supplies at cost and settled the amount due for the same at $798.65, which the defendant agreed to pay the plaintiff, and that upon demand the defendant refused to pay the plaintiff said sum.

The substituted complaint also alleged that said Chase assigned certain insurance policies to the defendant, and in consideration thereof the defendant promised to pay the plaintiff $66.67, and that the defendant, on demand, refused to pay the same.

It was too late to file an amendment without leave of court, and the plaintiff asked permission of the court to file this substituted complaint; the defendant objected to the granting of such permission, because the action was commenced by using the form of complaint denominated as the " common counts," and no one of said counts was an appropriate general statement of the cause of action according to the allegations in the substituted complaint. The court denied the plaintiff's motion, for the reasons stated in the defendant's objection. To this action of the court the plaintiff duly excepted.

The court then ordered the plaintiff to file within a time fixed, " a proper bill of particulars, or such other statement

by way of either a substituted complaint or an amendment, as may be necessary to show his cause of action under the common counts as fully as required in other cases." For the plaintiff's neglect to comply with this order the court granted a judgment of nonsuit in favor of the defendant.

The appeal assigns error in refusing, on the ground stated by the court, leave to amend; and in rendering the judgment of nonsuit.

*Alexander Dunnett* and *Walter Holcomb*, for the appellant (plaintiff).

*Samuel A. Herman*, for the appellee (defendant).

HAMERSLEY, J.   The Practice Act abolished forms of action.   With its enactment pleading as a system of technical form substantially disappeared.   The person claiming redress for legal wrongs done him by another may now state in one complaint all facts material to support his claim, and demand redress for all wrongs that can be legally inferred from the facts stated; subject, where redress is sought upon several causes of action, to the limitations of § 6 of the original Act, and to the discretionary power to strike out one or more of the causes of action if it appear to the court that they cannot all be conveniently heard together.

Legal duties are enforced, if they arise upon facts simply stated; they are no longer affected by any mere form of statement; the only rule as to this is, " a plain and concise statement of the material facts on which the pleader relies." *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 559.

The trial court is given power, largely discretionary, to enforce a truthful, concise and orderly statement of material facts.   These attributes belong to all statements upon which judicial action is based, and their observance is important under the Practice Act as well as under the common law. *Morehouse* v. *Throckmorton*, 72 Conn. 449, 452.   But at common law their observance was enforced through an elaborate

system of formalities largely based on the necessity of stating facts within the limitations of certain arbitrary forms of action. It was a special purpose of the Practice Act to entirely do away with this product of the infancy of judicial administration, and to provide against the growth of any new and possibly worse system of formality. Justice applies the principles of jurisprudence to facts stated and proved. While these principles are undeveloped, pleading naturally relies on form, and the form often controls the principle; but with the growth of jurisprudence and a better appreciation of essentials, the rule of form must give way to the rule of simplicity and truth. Pleading then ceases to be the mistress and becomes the handmaid of justice.

A change like that contemplated in the Practice Act cannot be accomplished by the simple enactment of a law. After the legislative command the profession and the courts require time to give full and true effect to a principle involving unforeseen modifications. In this we may find help in the practice of our sister States where a somewhat similar change has been made; but such aid is not always reliable. This is natural. The early codes were enacted when the old system of form was much more strongly entrenched than now, and could hardly be expected to sufficiently provide against the growth of a new system of form; while the change in Connecticut was made so late that we had the benefit to be derived from a study of results in other States and in England, an l could and did adopt provisions intended to prevent the aftermath of technicality that was liable to follow.

Among these provisions was one that the judges of the Superior Court should from time to time make such orders and rules as might be necessary and proper to give full effect to the provisions of the Act. Of course such rules cannot alter the Act, they can only give effect to its real purpose. One of the rules first adopted provided that the accompanying 468 forms might be used and should be deemed sufficient in all cases to which they were applicable, subject to the right of the party to amend and of the court to order fuller statements. These forms are not prescribed; their use is

not obligatory; they establish no technical form of a state-
ment; they are simply illustrations of a proper manner of
stating the facts material to a number of causes of action.
Their purpose was largely temporary, *i. e.*, to forestall, during
the inauguration of the change, much unprofitable discussion,
by providing statements adapted to ordinary cases, which,
with such changes as the court may order, should be deemed
sufficient, and to aid the profession in the task of freeing
themselves from the trammels of the old system and of
acquiring the simplest method of stating material facts, inde-
pendent of the requisites peculiar to the old forms of action.
As the judges said when the rules were adopted: " The Bar
has been so long accustomed to pleadings of a more artificial
character, it seemed proper to furnish a large number of
forms, illustrating the new practice. It is, however, hardly
necessary to observe that they are designed to guide, not to
hamper the profession, and that the only necessary rule of
pleading is to give (in appropriate paragraphs) 'a plain and
concise statement of the material facts.'" The judges were
in a measure subject to the same influences as the Bar, and
it could not be and was not expected that these first illustra-
tions would in all respects prove to be the best.

To this explanation of the forms there is one exception.
*Form 85* does not illustrate a proper and sufficient way of
stating all the causes of action it is framed to cover. Its
inclusion in the forms would be inexplicable except for the
reasons supplied in Rule II, § 1, and Rule IV, § 1. It there
appears that the form was provided solely for the purpose of
commencing a limited class of actions. It is not treated as
a complaint proper or sufficient to require an answer, or to
support a judgment by default. It practically serves the
purpose of a summons, giving the plaintiff a limited time
after the return of his writ to file his statement of claim.
*New York Breweries Corp.* v. *Baker*, 68 Conn. 337, 343 ; *Mc-
Namara* v. *McDonald*, 69 id. 484, 492; *Morehouse* v. *Throck-
morton*, 72 Conn. 449, 451; *Botsford* v. *Wallace*, ibid. 195,
199. But it is nevertheless, when used, a complaint un-
der the Practice Act. If the rule had not been passed and

*Form 85* had not been provided, the plaintiff would still be at liberty to use such a form, as he may use any ineffectual or defective statement of his facts. In that case the defendant could demur at once, and the plaintiff might also be liable to a penalty for the admittedly false pleading which the use of this form contemplates. The principal effect of the rule, therefore, is to suspend the penalties attaching to every defective statement of claim, by giving the plaintiff special time within which he may file a proper complaint by way of amendment. *Form 85* contains a general although in some respects an insufficient statement of several causes of action. By the language of the original rules under the Practice Act, it could only be used when some one of the paragraphs or so-called counts which it contained was an appropriate general statement of the cause of action. Rule II, § 1. This restrictive language was omitted in the recent revision of the rules, and under the rule (§ 129) and statutes now in force, *Form 85*, like any other insufficient statement, may be amended by supplying the omitted material facts and, like every complaint, may be amended by adding facts which may support additional causes of action. The extent of such amendment depends on the law regulating amendments which the rule does not alter. The intent of the rule is plain; it seeks to supply a practical convenience when a writ must be issued before the pleader has time to consider the detailed facts believed to support an action in the nature of a breach of simple contract. If the plaintiff intends to enforce a -cause of action generally, though insufficiently stated in any of the paragraphs of *Form 85*, he may use that particular form for the commencement of his action; and the rule gives him time after the return day, without liability to attack for his defective statement, to perfect and enlarge his complaint by amendment, in the same manner as any other complaint may be amended. The use of the allegations of this form with others properly setting out a cause of action was not contemplated by the rule. Such a complaint would not be the "form of complaint provided," and in such case there would be no occasion for the rule. The plaintiff in

properly stating one cause of action which might be joined with the causes indicated in *Form 85*, put himself in a position where the use of that form was unnecessary, and there was no occasion for the special privilege given by the rule.

No substantial question of pleading ought to arise under the rule in its present form. When a plaintiff uses *Form 85* the rule relieves him, for a limited time, from the penalties incident to the use of such a defective statement; but he must amend so as to have a proper complaint, and the extent of the amendment is governed by the general law, not by the rule.

Probably much of the confusion as to the rule was induced by calling this form of complaint "The common counts." Naturally, before the full effect of the Act was realized, this name led to a confusion of the statement so designated with the form of action known under the old law as the common count, and which was frequently added as an additional count in declarations in assumpsit. But the form of action known as the "common count" no longer exists. *New York Breweries Corp.* v. *Baker, supra.* This name was given to *Form 85* as a matter of convenience, unwisely perhaps, as now appears; possibly the equivocal word had better have been omitted entirely from the rules, as "trover" was. But it is merely a name, and the effect of the rule is the same as if it read, "The form of complaint hereinafter provided as *Form 85*."

The plaintiff may use *Form 85* whenever he sees fit, and be free from attack for its faults until he files his amendment as required; his complaint then stands like every other (the practical convenience the rule was intended to serve has been accomplished in giving him time to perfect his allegations so as to properly state the specific cause or causes of action he intended to pursue), and the permissibility of the amendment must be governed by the rules that control an amendment to any complaint, and the sufficiency and propriety of the complaint as amended must be determined like that of every other complaint.

The claim is intimated, if not directly made, that in spite of the main purpose of the Practice Act, of its explicit terms,

and the decisions of this court, forms of action have not been abolished; that a rule of court framed to give full effect to the Act has on the contrary revived one of the old forms of action, or has established an additional undefined form of action governed by a law of amendment differing from that applicable to complaints under the Act. The bald statement of this claim should be its sufficient refutation; but in view of such a notion we have deemed it advisable to restate somewhat fully the purpose and legal effect of the Practice Act.

In the present case, passing some matters suggested by the record which the parties have waived, the only question is whether the amendment to the complaint offered by the plaintiff is an allowable one.

Our policy in respect to amendments has from the beginning been very liberal. The first statutory regulation was in 1720; this applied directly to pleadings subsequent to the declaration, and permitted amendments whenever either party supposed he had missed the ground of his plea, subject to the power of the court subsequently declared to restrain amendments so far as might be necessary to compel parties to join issue in a reasonable time. In 1724 an amendment to the writ was allowed after a plea in abatement to the writ had been sustained. These early statutes have been continued in force and appear in the General Statutes of 1888, §§ 1027, 1001.

There was no statutory regulation applying directly to amendments of declarations, until 1794; but the courts, independently of any statute, exercised the power of allowing such amendments in the furtherance of justice. *Nettleton* v. *Redfield*, 2 Root, 119; *Phelps* v. *Sanford*, Kirby, 343. The Act of 1794 allowed in the broadest terms amendments to the declaration in actions at law and amendments to the bill in proceedings in equity, on payment of costs at the discretion of the court. It was early urged that this Act differed from the English statutes of amendment, which related to mere matters of form, while this allowed amendments in matters of substance; and that, therefore, it derogated from the common law and should not be extended. *Hobby* v. *Mead*, 1 Day,

206, 209. But the Act was in accord with our own common law, and has been liberally applied. It was held, however, that when a declaration or petition was on its face sufficient, a change which practically abandoned the cause of action stated and substituted a different cause of action affecting different parties, was not an amendment, but was the institution of a new action, which could only be done upon the issue of a new writ. *Ross* v. *Bates*, 2 Root, 198, 199; *Minor* v. *Woodbridge*, ibid. 274, 277; *Peck* v. *Sill*, 3 Conn. 157, 159. It was also held that the court had a discretion in the allowance of an amendment, for the purpose of doing justice between the parties. *Pond* v. *Smith*, 4 Conn. 297, 308. In the Revision of 1821 the Act of 1794 was divided. In actions at law amendments were allowed, "provided such amendment shall not change the form or ground of the action"; and in proceedings in equity amendments were allowed in the same terms, except that the *proviso* was not added. Rev. of 1821, pp. 44, 197. In 1855 and 1875 the power of joining counts in different forms of action, being for the same cause of action, was enlarged; and in the Revision of 1875 the Act of 1794, as modified in the Revision of 1821, was again modified by treating in one section actions at law and proceedings in equity, providing for amendments in both—"not changing the form or ground of the action,"—and by allowing the insertion in a declaration of new counts for the same cause of action declared upon in the original counts, and in any form of action counts which might have been inserted in the original declaration. Rev. of 1875, p. 426. Soon after the Revision of 1875 the Practice Act was passed. Indirectly this necessarily affected the law of amendment. The existing provision as to changing the form of action became immaterial. The union of legal and equitable remedies in one action giving preference to the rules of equity, wherever there is a variance between them and the rules of common law; the abolition of all technicalities in the manner of stating facts; the new principle adopted as to joinder of actions; the wide discretion given to trial courts in respect to the pleadings, extending to a power of striking

out causes of action and, if necessary, of framing issues for the parties; the special provision of the Practice Act that existing statutes, rules of court or practice relating to civil actions, shall be construed as applicable to proceedings by complaint, subject to such modifications as are made in the Act—all demonstrate that the passage of the Act involved a modification of the existing statute of amendment. There was no occasion for other statutory recognition of this modification until the Revision of 1888; then the section of the Revision of 1875 as modified by the Practice Act was re-enacted, in substance as follows: The plaintiff may amend any mistake or defect in the complaint, and add new counts or claims of causes of action, which might have been originally included therein, without costs within the first thirty days and at any time afterwards at the discretion of the court. General Statutes of 1888, § 1023.

Whether the legislature in adding the words "not changing the ground of action," when the law of 1794 was restated in the Revision of 1821, intended more than a declaration of the construction previously given to that Act by the courts, may possibly be doubtful; the use of the restrictive words in connection with a declaration, and not in connection with a petition in equity, would seem to indicate some distinction. But however this may be, the meaning given by this court to the phrase "not changing the ground of action," has been very liberal in favor of amendments.

In *Nash* v. *Adams*, 24 Conn. 33, 38, 39, the amendment clearly changed the "ground of action," in its technical sense of a cause of action arising upon specific facts stated. Counsel claimed that it was not an amendment but the institution in fact of a new suit upon a different cause of action. But the amendment was allowed by the trial court, and sustained by this court. The opinion delivered by CHIEF JUSTICE STORRS states clearly the true meaning of the phrase "ground of action," as used in the statute. The statutes of amendments and the decisions upon them in other States furnish little light in expounding our own statute. "Ours is a very ancient law (referring evidently to the broad terms of

the act of 1794 as interpreting the change in phraseology in the Revision of 1821, then in force and remaining in full force until the Practice Act was passed), and has continually been more and more liberally expounded, so as to further the beneficial purpose intended by it, which was to prevent the plaintiff from being put to a new action, where by accident, mistake, or inadvertence, or even by carelessness, he had, in his declaration, made a formal slip or misdescribed the facts of his case ; . . . and under the long and unquestioned practice of our courts, it has received such a broad construction, that we have no difficulty in sanctioning the amendment, which was allowed in this case. . . . The phrase, ' ground of action,' is not used in this statute in any technical or narrow sense, but was intended to refer rather to the real object of the plaintiff in bringing the suit ; and such a construction has always been given to it as would further that object." This decision has been affirmed and the principle laid down has been applied in a long line of cases. *Spencer* v. *Howe*, 26 Conn. 200, 201 ; *Bulkley* v. *Andrews*, 39 id. 523, 535 ; *Stuart* v. *Corning*, 32 id. 105, 108 ; *Howland* v. *Couch*, 43 id. 47, 52 ; *Beers* v. *Woodruff & Beach Iron Works*, 30 id. 308, 309 ; *North* v. *Nichols*, 39 id. 355. And the same phrase, used in the Act of 1883 (General Statutes, § 1029) in reference to hearings before commissioners on insolvent estates, has received the same construction. *Comstock's Appeal*, 55 Conn. 214 ; *Donahue's Appeal*, 62 id. 370, 373. Since the passage of the Practice Act, and especially since its modification of the law of amendment has been affirmed and the phrase "not changing the ground of action" has been dropped in the Revision of 1888, § 1023, a still more liberal allowance of amendment is sanctioned. *Logiodice* v. *Gannon*, 60 Conn. 81, 84 ; *Allen* v. *Woodruff*, 63 id. 369, 371. When a complaint erroneously describes the real transaction, an amendment is allowable, which in fact presents the same transaction, although by a different mode of statement founded upon a different view of the legal consequences. *Lovell* v. *Hammond Co.*, 66 Conn. 500, 507 ; *Moran* v. *Bentley*, 71 id. 623, 629.

After the enactment of the Practice Act, so far as the rule of amendment in equity differs from that at common law, the rule in equity prevails. *Botsford* v. *Wallace,* 72 Conn. 195, 201. And the omission of the words "not changing the ground of action," from § 1023, must be regarded as recognizing only the restriction involved in the nature of an amendment, as held under the original Act of 1794. A complaint as well as a declaration must accompany a writ of summons or attachment. The writ is void if there is no complaint, and is sheer oppression if the facts stated in the complaint are admittedly false. For this reason the plaintiff should not be permitted to bring the defendant into court or attach his property upon a false statement of claim which he intends to wholly abandon; and then, by way of amendment, compel the defendant to litigate a different claim without being brought into court in the manner required by statute. Such an amendment is not an amendment within the meaning of § 1023. On the other hand, every consideration of justice requires that the plaintiff should be enabled to pursue an action honestly brought, and to perfect his statement of facts supporting the cause of action indicated and which he intended to try, even though his statement may be defective in substance and misdescribe the facts.

Whether or not an amendment is allowable must be determined, largely as a question of common sense, in view of these considerations which have always lain at the root of our law of amendment, and are much more apparent under the Practice Act. Within the first thirty days a plaintiff may file an allowable amendment as of right. The law conclusively presumes the amendment to be in furtherance of justice. But afterwards other conditions may arise so that it may happen that the amendment would work injustice, and therefore the presumption is no longer conclusive, and the court is called upon to a certain extent to exercise its discretion.

What has been said applies more especially to the perfecting by amendment of some cause of action indicated, but insufficiently stated, in the complaint. If the plaintiff wishes

to add to the complaint other causes of action, the permissi-
bility of an amendment for that purpose depends upon whether
the causes of action stated in the complaint and in the amend-
ment might have been originally included in one complaint;
and is further subject to the discretionary power of the court
to exclude any cause of action it deems cannot be conven-
iently tried with the others stated.

The present case was tried before the revised rules went
into effect, but we think the amendment offered may fairly
be treated as setting forth in detail a cause of action which
the plaintiff has alleged, however generally or defectively,
in his complaint, and the enforcement of which was his real
object in bringing the suit. It is sufficient (without con-
sidering the other allegations) to refer to paragraph 11 of
the complaint, which alleges as a ground of action, that on
March 17th, 1899, a specific sum "was found due to the
plaintiff from the defendant on an account then and there
stated between them." Upon the facts thus generally stated
a legal obligation may arise to pay the specific sum claimed.
The detailed facts that may be covered by such general state-
ment are various; but whatever they may be, the ground or
cause of action, "the real object of the plaintiff in bringing
the suit," centers on the obligation to pay a sum certain
arising upon an examination by the parties of unsettled
claims of indebtedness, and an agreement between them that
all the articles are true and a particular sum remains due.
This obligation may arise when there is no express promise
to pay the particular sum, as where mutual claims are set
off one against the other, and a resultant balance agreed
upon as due; *Ashly* v. *James*, 11 M. & W. 541, 542; *Mil-
ward* v. *Ingram*, 2 Mod. 43, 44; or, when there is an express
promise, as where the claims of indebtedness are unilateral
and after examination of them and agreement upon the pre-
cise sum due, a promise, supported by that transaction, is
made by the defendant to pay that sum. *Foster* v. *Allanson*,
2 T. R. 479, 483; *Weigel* v. *Hartman Steel Co.*, 51 N. J. L.
446, 450, 451. It is not essential to the support of this obli-
gation that an actual examination by the parties of the items

of indebtedness should be proved; it is sufficient that the conduct of the parties is equivalent to such examination and to an agreement upon a specific sum and a promise to pay that sum. *Keen* v. *Batshore,* 1 Esp. 194; *Mitchell* v. *Allen,* 38 Conn. 188, 190. The essential and controlling fact upon which the obligation arises is an agreement between the parties that items of indebtedness, before open to dispute, are true and amount to a particular sum agreed upon as due from the defendant to the plaintiff. This is the ground of the plaintiff's action as generally stated in his complaint, and his real object in bringing this suit. Beyond question the same object is pursued in the amendment, which sets out in detail facts intended to supply deficiencies in the general statement. It seems idle to claim that such an amendment is an abandonment of the real object the plaintiff had in view, referring to a different transaction, and in fact instituting a new and different suit.

The parties have argued this case as if paragraph 11 were the common-law form of action in general assumpsit, known as the *insimul computassent* count, and the question were: Can the state of facts set up in the amendment be proved under this common-law count. The common-law decisions on the scope and purpose of forms of action which no longer exist, are still valuable, invaluable we might say, for the light thrown on the essential nature of legal rights and duties; but it is patent that such a question as this cannot be decisive of the legal effect of a plain statement of material facts under the Practice Act. It was the very purpose of that Act to enable the plaintiff to state his facts in simple language, and the court to enforce the obligations arising upon facts so stated, unaffected by the restrictions of any form of action. *Morehouse* v. *Throckmorton,* 72 Conn. 449, 451. We do not, therefore, directly treat this question, without, however, meaning to imply that the common-law count would not cover such a state of facts. Certainly no common-law pleader would set out these facts in a count in special assumpsit, without adding as an appropriate general statement of the same cause of action the *insimul computassent* count.

It is not material now whether the complaint as amended would stand the test of demurrer. The single question is whether the amendment is wholly inadmissible, as being in fact not an amendment but the institution of another action. Nor is it material whether a rejection of the amendment in the exercise of the court's discretionary power could be reviewed. The court erred in holding it had no power to allow the amendment, and therefore refused to exercise discretion. Such action can be reviewed. *Trustees* v. *Christ Church*, 68 Conn. 369, 373; *Moran* v. *Bentley*, 71 id. 623, 628.

It is unnecessary to refer particularly to the so-called second count of the amendment. Even if it were inadmissible as an amendment to any paragraph of the complaint, yet if the plaintiff pursues by force of a valid amendment any cause of action contained in his complaint, he may add allegations supporting new causes of action, if they might have been originally inserted in the complaint (§ 1023), subject to the discretionary power of the court over such joinder.

The claim is also made that the judgment, although induced by a material error, cannot be reversed, because the trial court had power to nonsuit the plaintiff for disobedience of its order. There may be cases where the disobedience of an order founded on error is punished by nonsuit under such circumstances that this court will not reverse the judgment for such error. *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 566. This is not such a case.

There is error, the judgment of the Court of Common Pleas is reversed and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred, except AN-DREWS, C. J., who dissented.