EDGAR T. ANDREWS *vs.* JOHN R. PECK.

Third Judicial District, Bridgeport, October Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

This court, upon appeal, will accept the issue as framed by the pleadings and presented by the parties to the trial court for its determination.

The defendant purchased a horse which was warranted to be "sound and true in every spot and place." In an action by the seller to recover the balance of the purchase price, the defendant set up this warranty and alleged, as the only breach, that the horse was unsound because of its unmanageableness while being shod; and this breach was denied by the plaintiff. *Held* that such a trait or habit constituted a vice rather than an unsoundness, and therefore was not within the issue raised by the pleadings and determined by the trial court.

To render a horse unsound at the time of his sale, he must either have some disease, or must have undergone some alteration of structure, which diminishes, or in the ordinary course of things will diminish, his natural usefulness.

Submitted on briefs October 28th—decided December 16th, 1910.

ACTION to recover the balance of the purchase price of a horse sold by the plaintiff to the defendant, brought by appeal from the judgment of a justice of the peace to the Court of Common Pleas in Fairfield County and tried to the court, *Scott, J.;* facts found and judgment rendered for the plaintiff for $39, and appeal by the defendant. *No error.*

The plaintiff brought suit to recover the balance of the purchase price of a horse. The defendant purchaser filed a counterclaim for the breach of an express warranty of the animal. The warranty alleged was that the horse was sound and true in every spot and place. The only breach set up was that it was then unsound, by reason of being unmanageable while it was being shod. The allegation of this breach was

Andrews v. Peck.

denied by the plaintiff. The court found that the warranty was made as alleged, save that one eye was excepted. No question is made growing out of this latter defect. It was also found that upon the last occasion before the sale, when the horse was shod, it was hurt or terrified during the operation; that from this terror or hurt there originated so great a fear of the tools of a blacksmith, that when the horse was first shod after the sale it was unruly and fractious, and habitually thereafter exhibited the same trait whenever it was taken into a blacksmith shop; that it was never unruly or fractious under other conditions; that as a consequence of this trait it was necessary to place it in stocks, or to throw it, in order to shoe it; that while it could be thus shod without danger to itself or the smith, it was more troublesome and expensive to shoe it than it otherwise would have been; and that the facts thus outlined were such as to decrease the market value of the animal. Both parties at the time of sale were ignorant of these facts, and of what occurred when it was last shod during the plaintiff's ownership. No other breach of warranty was claimed than such as arose from the existence of this trait and resulting habit.

*Frank M. Canfield*, for the appellant (defendant).

*Martin J. Cunningham*, for the appellee (plaintiff).

PRENTICE, J. The defendant seeks recovery upon a counterclaim for the breach of warranty of a horse. It is found that the warranty was made. The only breach alleged is one resulting from the fact that the horse was at the time of sale unsound. The unsoundness complained of is expressly alleged to have been unmanageableness while being shod. The issue presented to the court was, therefore, whether or not the animal was unsound for reasons substantially as averred. That

defendant's counsel recognized this as the issue, and tried the case upon that theory, is apparent, and the court's memorandum of decision is confined to a consideration and determination of it. Its conclusion, which was made the sole basis of decision, was that a warranty of soundness was not broken by the existence of the conditions which were found to have existed.

We have no occasion, therefore, to inquire whether or not the terms in which the warranty was couched, in their true intent and meaning, carried a more comprehensive warranty than that of soundness. It is our duty under the circumstances to accept the issue as framed by the pleadings, and review the court's determination of it.

Baron Parke, in *Kiddell* v. *Burnard*, 9 Mess. & W. 668, following the tenor of his ruling in the earlier case of *Coates* v. *Stephens*, 2 Moo. & Rob. 157, defined the effect of a warranty of soundness in a horse as follows: "The rule as to unsoundness is, that if at the time of sale the horse has any disease, which either actually does diminish the natural usefulness of the animal, so as to make him less capable of work of any description, or which in its ordinary progress will diminish the natural usefulness of the animal; or if the horse has, either from disease or accident, undergone any alteration of structure, that either actually does at the time, or in its ordinary effects will diminish the natural usefulness of the horse, such horse is unsound." This statement, concurred in by his associates, has ever since remained the settled rule in England, and been accepted and followed by the courts of this country and text writers as embodying the correct test to be applied under all ordinary conditions. We have looked in vain for authority which gives to the warranty a wider scope. It furnishes the test to be applied to the situation before us.

Applying it, the conclusion is inevitable that the

Andrews *v.* Peck.

horse in question, when sold, was not unsound by rea-
son of the unfortunate trait which it had acquired. It
had no disease, incipient or otherwise, and, the eye
aside, it had not, either from disease or accident, under-
gone any alteration of structure. It had a bad trait,
which developed into a bad habit, which impaired its
value. But such traits or habits constitute a vice
rather than unsoundness. Not everything which im-
pairs the value of an animal constitutes unsoundness.
No such test is recognized by any authority which we
have been able to discover. Language of opinions can
be found which is susceptible of a construction to the
effect that a physical condition, to constitute unsound-
ness, should be one which depreciated value; but no-
where is it held, we believe, that whatever depreciates
value amounts to unsoundness, or that the conditions
stated by Baron Parke need not be present. *Alexander*
v. *Dutton*, 58 N. H. 282.

There is no error.

In this opinion HALL, C. J., THAYER and RORA-
BACK, Js., concurred.

WHEELER, J. (dissenting). I concur in the judgment
that there is no error, but not with the reasons given in
the opinion in support of that conclusion.

The opinion holds that the breach of the warranty
alleged in the answer and counterclaim is "one result-
ing from the fact that the horse was at the time of sale
unsound," and therefore the court has no occasion to
inquire "whether or not the terms in which the war-
ranty was couched, in their true intent and meaning,
carried a more comprehensive warranty than that of
soundness. It is our duty under the circumstances to
accept the issue as framed by the pleadings, and review
the court's determination of it."

The warranty alleged was "that the horse so sold

was sound and true in every spot and place." The
warranty proven was that "said horse was sold with a
warranty that it was sound and true in every spot and
place, *except one eye*." The breach alleged was: "In
fact said horse was not sound, but was unmanageable
while being shod, and blind in one eye." The breach
proven consisted in the horse having "a habit of be-
coming unmanageable while being shod."

The opinion holds the breach alleged only went to so
much of the warranty as related to soundness. I am of
opinion that the breach alleged went to the entire war-
ranty, but that it, as established by the finding, meant
no more than a warranty of soundness.

There were two methods of pleading the breach:
preferably by pleading the facts which described the
breach, viz: that the horse had a habit of becoming
unmanageable while being shod; or, by negativing the
terms of the warranty. The pleader chose neither
method, but pleaded that the "horse was not sound,
but was unmanageable while being shod, and blind in
one eye."

The language of the breach pleaded, "but was un-
manageable while being shod," is separated from the
term "sound . . . and blind in one eye," by the
punctuation; it is not limited to the single term in the
warranty, "sound," but applies to the warranty in its
entirety, to "true" as well as to "sound." The breach
of the warranty is that the horse "was unmanageable
while being shod, and blind in one eye," not simply
that he was "not sound."

A construction that the breach alleged applies to
"sound" but not to "true" in the warranty, is refining
the pleading in technicalities, and is at variance with
the Practice Act and rules as interpreted in many opin-
ions. Under our present system of pleading, "legal
duties are enforced, if they arise upon facts simply

stated; they are no longer affected by any mere form of statement; the only rule as to this is 'a plain and concise statement of the material facts on which the pleader relies.' . . . With the growth of jurisprudence and a better appreciation of essentials, the rule of form must give way to the rule of simplicity and truth. Pleading then ceases to be the mistress and becomes the handmaid of justice." *Dunnett* v. *Thornton,* 73 Conn. 1, 5, 46 Atl. 158; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 702, 52 Atl. 490.

A variance between proof and allegation unless it be material and have misled should be disregarded. *Anderson* v. *United States Rubber Co.,* 78 Conn. 48, 60 Atl. 1057; *Robertson* v. *Lewie,* 77 Conn. 345, 346, 59 Atl. 409; Rules of Court, p. 245, § 149.

The same rule of construction of a counterclaim, after proof of a cause of action, ought to prevail to keep a party in court and render in his favor such judgment as the facts warrant, as prevails to support an ordinary judgment. "It has ever been the policy of courts to exercise no small measure of ingenuity in bringing favorable implications and presumptions to the aid of the allegations of declarations and complaints after verdict or judgment, but the reason of such a rule of construction does not exist where a pleading is attacked upon demurrer." *Price* v. *Bouteiller,* 79 Conn. 255, 257, 64 Atl. 227.

Examples of the liberality of our court in refusing to permit technical variances which did not mislead to defeat the judgment warranted by the proof, are found in *Osborn* v. *Norwalk,* 77 Conn. 663, 665, 60 Atl. 645, and *Fenton* v. *Mansfield,* 82 Conn. 343, 73 Atl. 770. In *LaBarre* v. *Waterbury,* 69 Conn. 554, 37 Atl. 1068, HALL, J., said: "It is within the discretion of the trial court to allow, or even direct, an amendment of the complaint at any time before judgment is rendered."

Within these principles, even though there were a material variance between proof and allegation, it did not mislead, and in such a situation it would be the duty of the trial court to direct an amendment so that the judgment might follow the cause proven.

The trial judge placed his decision upon the ground that the unmanageableness of the horse while being shod was a breach of the warranty given; not of a part of the warranty but of the entire warranty. A reference to the memorandum filed by him settles this point. The judge says: "The horse was sold with a warranty that it was sound in every spot and place. . . . The decisive question in the case is, whether or not the warranty given was broken because the horse was unmanageable while being shod. I think that a warranty of soundness is not broken because of the existence of a bad habit." In the finding the court states: "Second. The defendant claimed that there had been a breach of the warranty, and that judgment should be rendered for the defendant; but the court overruled said claim and rendered judgment for the plaintiff." So that the issue tried and decided was whether there had been a breach of the warranty given, whether the fact that "the horse had a habit of becoming unmanageable while being shod," was a breach of the warranty given.

The suggestion that the breach alleged did not run to the entire warranty first appears in the case in the opinion of the majority.

If this court found a cause of action proven upon the facts of the finding, and also found the allegations of the cause of action defectively stated, it was its duty, if no one had been misled, to see that the cause of action proven was put in judgment, and if necessary, that an amendment be directed and a judgment then entered in accordance with its instruction.

So it seems to me the court was bound to pass upon the meaning of this entire warranty, and if it found the breach proved supported a cause of action it should have directed an amendment of the defectively alleged breach and directed a judgment in accordance with the cause of action found.

A warranty standing alone and in the absence of explanation, that a horse is sound and true in every spot and place, would ordinarily be regarded as a broad and far-reaching warranty. "True in every spot and place" would be commonly understood as including more than "sound in every spot and place," and to have a meaning separate from and independent of "sound." "True" might be used of a horse in a biological or anatomical sense, but such would hardly be its ordinary use in every day speech in a horse trade. "True" may mean correct, right, honest, or sure and to be relied on; and when used of a horse in connection with a warranty of soundness, "true in every spot and place," means that the horse can be relied on to act properly in every reasonable situation. He can be driven upon the highways, meeting the ordinary vehicles and objects upon the highway, and he can be relied upon to be true under such circumstances, and his conduct and behavior will conform to right and honest standards. He can be driven to the railroad station, and at sight of engine not bolt and run. He is not to be expected to meet a troop of elephants and not show fear.

Any conduct which was not within these definitions, and which materially affected the value of the horse, would be a breach of a warranty that he was "true in every spot and place," and give a cause of action.

The breach found is not the conduct of a single occasion but conduct which has become a habit.

In *Walker* v. *Hoisington*, 43 Vt. 608, 611, the court

construed a warranty that a horse was "sound and right" thus: "Perhaps the horse was physically sound, although he was what is called a cribber, and perhaps not; as to that we make no decision and express no opinion; but the warranty was as to more than soundness, it was the horse was sound and right. A fair interpretation of this warranty would make it mean that the horse was right in conduct and behavior as to all matters materially affecting its value, as well as physical condition."

The horse in question was so unmanageable when being shod he had to be put in stocks; blacksmiths refused to shoe him, and it was necessary to take him to a distance to get him shod. This added to the cost of shoeing him, caused a loss of time to the owner, and diminished the value of the horse. This was not normal conduct in a horse. The blacksmith shop was a reasonable place to take him but one where he was not to be relied on. A horse with such a habit cannot be said to be true in every spot and place.

If this warranty stood alone and without explanation or other fact giving to it a different meaning, the conclusion of the trial judge that the warranty proven was simply a warranty of the soundness of the horse would be erroneous. But it is to be noted that the warranty found proven by the court differs from the warranty alleged. That found by the trial judge was: "Said horse was sold with a warranty that it was sound and true in every spot and place *except one eye.*"

Sound and true in every spot and place may refer to the physical condition of the horse, and in this warranty both are limited in their meaning by the exception following them, *"except in one eye."*

Language such as this might have its meaning fixed by the context, by facts explanatory in character; the terms of this warranty fix the meaning and show clearly

what the parties intended. "Except in one eye" refers to the physical condition, and controls the meaning of sound and true. The defendant understood this warranty as the trial judge did, for in his answer and counterclaim he pleaded: "By reason of being so unmanageable, said horse was not sound," thus limiting the meaning of sound to the physical condition and making sound and true equivalent terms.

The trial judge held that the warranty given was one of soundness and was not broken because of the existence of a habit in the horse of becoming unmanageable while being shod.

That conclusion as applied to this case was correct; as a statement of a proposition of law of universal application it required the qualification, unless such habit sprang from or was the result of disease.

In this case we do not know whether the habit sprang from disease or not. For the foregoing reasons I concur in the judgment that there is no error.