TOWN OF WESTPORT *v.* THE BOSSERT CORPORATION

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 2—decided November 14, 1973

*Harry M. Lessin,* for the appellant (defendant).

*Richard J. Diviney,* with whom, on the brief, was *Stanley P. Atwood,* for the appellee (plaintiff).

BOGDANSKI, J. The plaintiff, the town of Westport, brought this action to recover municipal taxes from the defendant, The Bossert Corporation, using a common counts form of complaint. Thereafter

the town filed a bill of particulars setting forth the items of taxes, interest and lien fees claimed. The defendant filed a demurrer to the complaint as made more specific, which demurrer the court overruled. The defendant then filed its answer and special defense. The town moved for summary judgment, which was granted. From the judgment rendered on that motion, the defendant has appealed to this court.

The principal issue raised and argued in this appeal is whether the common counts writ can be used to initiate an action to collect municipal taxes. The defendant also presses the claim that its counter affidavit raised triable issues of fact and therefore precluded the granting of summary judgment.

The record reveals the following facts: As of December 18, 1970, the defendant owed the town of Westport municipal taxes for the years 1964 through 1969, consisting of real estate, business, and personal property taxes, amounting to $20,159.38.[1] On that day it came to the attention of the town attorney that there was to be a transfer of title to real estate owned by the defendant and located in the towns of Westport and Norwalk. On that same day the town commenced this action by means of a common counts writ and garnisheed the trustee account of the defendant's attorney in the amount of $25,000. Thereafter, on March 10, 1971, the town filed its bill of particulars. The town has relied

---

[1] Prior to the granting of summary judgment for the plaintiff the defendant paid in full the real estate taxes it owed. Its liability was thereafter adjudged to be $19,824.36 in back taxes, plus $5056.84 in interest and $1500 in attorney's fees.

on a single count in its complaint which alleges that "[o]n and before date hereof the plaintiff lent $25,000.00 to the defendant."

The defendant contends that this action to collect taxes cannot be instituted by means of the common counts writ because the count in question is not "a general statement of the cause of action," as required by Practice Book § 141 and General Statutes § 52-113.

Form 5 of the Practice Book, the common counts form of complaint, is a vestige of the days of strict common-law pleading. Originating with the rules promulgated under the Practice Act of 1879, it abolished and superseded the four forms of the common count used at common law to initiate actions of general or indebitatus assumpsit. *New York Breweries Corporation* v. *Baker,* 68 Conn. 337, 343, 36 A. 785; *Dunnett* v. *Thornton,* 73 Conn. 1, 9, 46 A. 158. The form consists of ten paragraphs, each a separate cause of action, which state generally the more frequent means by which debts are created, such as money lent, money had and received, and money paid. *New York Breweries Corporation* v. *Baker,* supra, 344; 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 98; 1 Corbin, Contracts § 20. The common counts have been preserved "to supply a practical convenience when a writ must be issued before the pleader has time to consider the detailed facts believed to support an action in the nature of a breach of simple contract." *Dunnett* v. *Thornton,* supra, 8. As Stephenson, op. cit., says, the common counts writ is "appropriate when time is of the essence in making service or effecting an attachment or in cases where it is believed that the initiation of an action will be enough to force pay-

ment from a recalcitrant defendant. No other advantage is gained through the use of the writ."[2] The purpose of the Practice Act of 1879 was to liberalize pleading and to free it from the strictures of common-law requirements. The scope of the actions enumerated in Form 5 is not limited by the scope of the prior common-law forms of action. *Dunnett* v. *Thornton,* supra, 16. The common law, nevertheless, is still relevant since Form 5 covers "in substance the same rights of action for which the common law remedy was *indebitatus assumpsit* or the common counts." *New York Breweries Corporation* v. *Baker,* supra, 344.

Common-law courts construed the action of general or indebitatus assumpsit broadly so as to be applicable on equitable or moral grounds. From the early seventeenth century, common-law courts implied an assumpsit, or promise, whenever a contractual debt was found to exist. *Slade's Case,* 4 Coke 92a (1603). Ultimately the action of general assumpsit was extended to contracts "implied in law" (now referred to as quasi contracts), which included "contracts" founded on a statutory duty to pay money, in which the assumpsit was a pure fiction. Ames, "The History of Assumpsit," 2 Harv. L. Rev. 1, 63–64 (1888). Courts frequently upheld actions in general assumpsit when the defendant would otherwise be unjustly enriched. 1 Corbin, Contracts § 20. Thus, in *Northrop* v. *Graves,* 19 Conn. 548, this court held that when money is paid by one on the basis of a mistake as to his rights and duties and the recipient has no right in good

---

[2] The defendant is not required to answer until the plaintiff completes his pleading by filing a bill of particulars, substituted complaint or amendment. Practice Book § 141; General Statutes § 52-113.

conscience to retain the money, an action of indebitatus assumpsit may be maintained to recover the money, regardless of whether the mistake was one of fact or of law. The court further said (at p. 555): "The action of *indebitatus assumpsit* for the recovery of money had and received, and for money paid, &c. is an action of the common law, but, to a great extent, an equitable action, adopted for the enforcement of many equitable, as well as legal rights. And it is a fundamental principle of this action, that it lies for the recovery of money, which, *ex aequo et bono,* ought to be paid over to the plaintiff; and that the law, in case of such equity, will imply a promise to pay it. 3 *Bla. Com.* 163." The specific count invoked in this complaint and relied upon by the plaintiff, the "money lent" count, has also been interpreted broadly. In *Hamilton* v. *Starkweather,* 28 Conn. 138, for example, the court held that an actual transfer of money into the defendant's hands was not necessary for this count to be upheld.

It is true that at common law general assumpsit could not be used for the collection of a tax. *Cromwell* v. *Savage,* 85 Conn. 376, 377, 82 A. 972. But the scope of the modern common counts writ is not necessarily limited by that rule. Moreover, Connecticut has by statute provided that "[a]ll taxes properly assessed shall become a debt due from the person, persons or corporation against whom they are respectively assessed to the town, city, district or community in whose favor they are assessed, and may be, in addition to the other remedies provided by law, recovered by any proper action in the name of the community in whose favor they are assessed." General Statutes § 12-161. The object of this stat-

ute is "to give a simple remedy for the collection of taxes by an ordinary action and to dispense with prolixity in pleading." *Waterbury* v. *Schmitz,* 58 Conn. 522, 526, 20 A. 606.

In summary, we have seen (1) that the common-law predecessor of Form 5 was broadly construed so as to be available for the collection of a variety of debts of a quasi contractual and equitable nature; (2) that the purpose of the Practice Act of 1879 was to liberalize the rules of pleading; (3) that the applicability of Form 5 is not limited by common-law restrictions, and (4) that the legislature has expressly provided that municipal taxes are debts which may be collected in civil actions like ordinary debts. On the basis of the foregoing, we conclude that the common counts writ may be used to initiate an action for the collection of a municipal tax.

The defendant relies on *Cromwell* v. *Savage,* supra, to argue that a tax is not a debt collectible by means of the common counts complaint. That case held that despite the provisions of the predecessor of § 12-161, a tax is dissimilar to an ordinary contractual debt, and that the Statute of Limitations " '. . . for a debt due by book or to balance book accounts, or upon any simple or implied contract' (General Statutes [1902 Rev.] § 1110 [now § 52-576])," did not bar actions for back taxes. The court there said that " '[d]ebt' was used in . . . [the precursor of General Statutes § 12-161] in its higher sense of a just demand, rather than in its ordinary sense of an obligation arising out of a contract." *Cromwell* v. *Savage,* supra, 377–78. Since we have already established

that Form 5 is not limited to actions based on ordinary debts, the defendant's reliance on *Cromwell* v. *Savage* is misplaced.

The defendant's other claim, that its counter affidavit raised triable issues of fact and therefore precluded the granting of summary judgment, has no merit. The affidavit both admits that the defendant "does not deny" that it owed back taxes to the plaintiff and fails to raise any material issue of fact.

There is no error.

In this opinion the other judges concurred.